## UNITED STATES v. O'CONNELL et al.
### No. 140, Docket 20842.

Circuit Court of Appeals, Second Circuit.
Jan. 26, 1948.

Writ of Certiorari Denied March 29, 1948.
See 68 S.Ct. 744.

Sol Gelb and Herbert Zelenko, both of New York City, for appellants.

John F. X. McGohey, U. S. Atty., of New York City (Bruno Schachner, John C. Hilly and Frederick H. Block, Asst. U. S. Attys., all of New York City, of counsel), for appellee.

Before SWAN, CHASE and FRANK, Circuit Judges.

SWAN, Circuit Judge.

Upon trial to a jury the four appellants were convicted under an indictment which charged them with conspiring to violate section 409 of Title 18 U.S.C.A. The statute in effect during the alleged conspiracy provided, in so far as relevant, that "whoever shall steal or shall unlawfully take by any fraudulent device, scheme, or game, from any * * * dining car * * * when such car is a part of a train moving from one State * * * to another State * * * any money * * *" shall be fined or imprisoned or both.[1] The appellants were members of the crew of a dining car operated in interstate commerce by the New York Central Railroad in the summer of 1945. O'Connell served as steward and the other three as waiters. With them were also indicted the other members of the crew, namely, the chef and three other waiters.[2] The gist of the conspiracy was collecting money from passengers served with meals and converting the money so collected instead of accounting for it to their employer, th'e railroad company. This object was accomplished by taking oral orders instead of requiring the passenger to write out a meal check, as the rules required, or by using the same meal check more than once. A meal check consists of two parts, an original and a carbon duplicate. The original is supposed to be shown to the passenger when he pays for the meal and then to be delivered by the waiter to the steward, together with the money collected; at the end of the trip the steward must turn in to the railroad company the original checks and money corresponding in amount to the total of the prices indicated on the checks. The duplicate checks are left with the chef to be turned in by him so that they can be checked against the originals turned in by the steward. By taking oral orders for meals and by using the same meal check more than once, the conspirators were able to divide among themselves the money collected without their defalcations being discovered when the meal checks were turned in.

The appellants seek reversal of their conviction and sentence on two grounds: (1) that what they did was not a crime within section 409 because it constituted embezzlement, not larceny; and (2) that the evidence proved not a single conspiracy between all the defendants, as charged in the indictment, but six distinct conspiracies, each embracing one of the waiters together with the steward and chef. Neither contention can be sustained.

It may be conceded that according to the technical rules of the common law the conversion of money received from passengers in payment for meals constituted embezzlement rather than larceny. It is also true that section 409, before the 1946 amendment, did not expressly refer to embezzlement; it used the words "steal" or "unlawfully take." But as we held in United States v. De Normand, 2 Cir., 149 F.2d

---

[1] The quoted provision was added to section 409, as originally enacted, by the amendment of January 21, 1933, 47 Stat. 773. A further amendment was approved July 24, 1946, 60 Stat. 656, 18 U.S.C.A. § 409. This amendment was too late to be applicable to the conspiracy charged against the appellants.

[2] These four pleaded guilty.

622, 624, certiorari denied 326 U.S. 756, 66 S.Ct. 89, 90 L.Ed. 454, rehearings denied 326 U.S. 808, 811, 66 S.Ct. 165, 331, 676, 90 L.Ed. 493, 495, the prohibitions of the statute should not be restricted to technical common law larceny.[3] What the appellants did, whether or not it amounted to embezzlement, is aptly described by the statutory language declaring punishable any one who "shall * * * take by any fraudulent * * * scheme" any money "from any * * * dining car" moving in interstate commerce. They were engaged in a scheme to defraud the railroad company by unlawfully taking its money with them from the dining car. Upon precisely similar facts, conviction of members of a dining car crew was upheld without inquiry as to whether their conduct amounted to embezzlement. Stone v. United States, 9 Cir., 153 F.2d 331.

The appellants support their argument by quotations from the reports and debates which accompanied the passage of the 1933 amendment,[4] but the references therein to "theft" and "steal" are not persuasive of any intention to exclude from the prohibited conduct facts which might constitute technical embezzlement. Nor does the legislative history of the 1946 amendment compel that result.[5] This was a clarifying amendment, in our opinion, and the fact that committees believed they were adding new matter by specifically including embezzlement cannot control judicial interpretation of the former statute.[6] In the Stone case, supra, that statute had already been construed to cover conduct like that of the appellants.

As to the second ground of appeal, little need be said. The small number of persons in the dining car crew and the nature of their operations within the car made it entirely reasonable for the jury to find a single conspiracy which embraced them all. The case is like Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, rather than Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, upon which the appellants rely.

Judgment affirmed.

---

[3] See also United States v. Handler, 2 Cir., 142 F.2d 351, certiorari denied 323 U.S. 741, 65 S.Ct. 40, 89 L.Ed. 594, rehearing denied 323 U.S. 812, 65 S.Ct. 112, 89 L.Ed. 647, construing section 415 of Title 18 U.S.C.A.

[4] See H.Rep.1791, 72d Cong. 2d Sess.; 76 Cong.Rec. pp. 710, 1897, 72d Cong. 2d Sess.

[5] H.Rep.1116, 79th Cong. 2d Sess.; S.Rep.1632, 79th Cong., 2d Sess.

[6] See United States v. Stafoff, 260 U.S. 477, 480, 43 S.Ct. 197, 67 L.Ed. 358; American Exchange Securities Corp. v. Helvering, 2 Cir., 74 F.2d 213, 214; City of New York v. Village of Lawrence, 250 N.Y. 429, 447, 165 N.E. 836; Village of Morgan Park v. Knopf, 210 Ill. 453, 460, 71 N.E. 340.